Case 1:18-cr-00439-MKB     Document 71-2     Filed 05/05/23     Page 1 of 26 PageID #: 647

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------X

NG CHONG HWA, also known as
ROGER NG,

      Plaintiff,

  -against-

TIMOTHY LEISSNER,

      Defendant.

-------------------------------------------------X

Index No.:

Filing Date: Nov 11, 2022

**SUMMONS**

Plaintiff designates New York
County as the place of trial

To the above-named Defendant:

  **YOU ARE HEREBY SUMMONED** to answer the verified complaint in this action and
to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a
notice of appearance, on the Plaintiff's attorney(s) with 20 days after the service of this summons,
exclusive of the day of service (or within 30 days after the service is complete if this summons is
not personally delivered to you within the State of New York); and in case of your failure to appear
or answer, judgment will be taken against you by default for the relief demanded herein.

Dated:   November 11, 2022
     New York, New York

           BRAFMAN & ASSOCIATES, P.C.

           Marc A. Agnifilo, Esq.
           Teny R. Geragos, Esq.
           Zach Intrater, Esq.
           Jacob Kaplan, Esq.
           *Attorneys for Plaintiff*
           256 Fifth Avenue, 2nd Floor
           New York, New York 10001
           (212) 750-7800

**EXHIBIT 1**

*United States v. Leissner,* 18 Cr. 439 (MKB)

Case 1:18-cr-00439-MKB    Document 71-2    Filed 05/05/23    Page 2 of 26 PageID #: 648

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------X

NG CHONG HWA, also known as
ROGER NG,

                            Plaintiff,

    -against-

TIMOTHY LEISSNER,

                            Defendant.

-----------------------------------------------X

Index No.

**COMPLAINT FOR FRAUD, FRAUDULENT CONCEALMENT, AND UNJUST ENRICHMENT**

DEMAND FOR JURY TRIAL

TO THE SUPREME COURT OF THE STATE OF NEW YORK

    Plaintiff, NG CHONG HWA, also known as ROGER NG (hereinafter "plaintiff Ng"), through his counsel, Marc Agnifilo, Teny Geragos, Zach Intrater and Jacob Kaplan of the firm Brafman & Associates, P.C., as and for his Complaint against defendant TIMOTHY LEISSNER (hereinafter "defendant Leissner"), alleges as follows:

## INTRODUCTION

    1.    Between early 2015 and the present, the defendant Timothy Leissner has committed fraud against plaintiff Roger Ng. This fraud has consisted of a pattern of lies, deceptions, and false statements. The fraud is documented: defendant Leissner himself admitted on cross examination at the trial of <u>United States v. Roger Ng</u>, 18-cr-538 (MKB) (E.D.N.Y.), that he lied to plaintiff Ng. Also, emails admitted into evidence at that trial further prove the fraud committed by defendant Leissner against plaintiff Ng. Indeed, based on defendant Leissner's trial testimony and the exhibits admitted into evidence consisting of his emails and other documents, Leissner lied to plaintiff Ng time and again between early 2015 and the present. Defendant Leissner did so as a part of a concerted effort to steal and keep plaintiff Ng's property: cash and shares in companies called Celsius Holdings, Inc. ("Celsius"), and Sentient Technologies Holdings, Ltd. ("Sentient").

1

Case 1:18-cr-00439-MKB    Document 71-2    Filed 05/05/23    Page 3 of 26 PageID #: 649

Leissner's fraud included conduct that took place, in part, in New York County. Plaintiff Ng brings this complaint against defendant Timothy Leissner for fraud, fraudulent concealment and unjust enrichment to hold Leissner accountable for the lies he told plaintiff Ng—lies Leissner told to receive and retain plaintiff Ng's money and property.

2.      Defendant Leissner lied to plaintiff Ng, Ng's wife and others repeatedly, as a part of a pattern and scheme to defraud, between in or about February 2015 and the present. Defendant Leissner told these lies as part of his continuing fraud and theft of a $1,250,000 investment in a company Celsius that the plaintiff Ng made and entrusted to Leissner and a $1,000,000 payment to defendant Leissner to obtain part of defendant Leissner's interest in a company called Sentient. Today, plaintiff Ng's investment amount in Celsius is worth in excess of $130,000,000. Despite defendant Leissner representing to plaintiff Ng and others that the investment was secure, that the shares were available and that Leissner himself would personally guarantee the principal, Leissner has never given Ng a dime. Instead, defendant Leissner lied to get plaintiff Ng's money, lied to keep Ng's money, and lied when he promised to provide Ng with a return on his investment.

3.      Defendant Leissner used the very shares he stole from plaintiff Ng to secure his own bail and satisfy his criminal forfeiture in connection with a criminal case filed in the Eastern District of New York entitled United States v. Tim Leissner, 13-cr-00439 (MKB).

4.      Finally, by defrauding Ng and stealing his investment that in 2015 was worth about $1,250,000 and is currently worth about $130,000,000, defendant Leissner deprived, and is currently depriving, plaintiff Ng of the funds needed to finance his own defense, including an appeal of the conviction at the trial at which Leissner was the Government's star witness. Plaintiff Ng is in the unimaginable position of having to defend himself against allegations made by the

2

Case 1:18-cr-00439-MKB    Document 71-2    Filed 05/05/23    Page 4 of 26 PageID #: 650

person who defrauded him and who stole the money that plaintiff Ng needs to defend against those same allegations.

## THE PARTIES AND OTHER RELEVANT INDIVIDUALS AND ENTITIES

5.      Plaintiff Roger Ng is a Malaysian national. He was charged as part of the same criminal case as his former boss, defendant Leissner. In February 2019, Ng waived extradition to the United States. He was brought to the U.S. pursuant to this extradition waiver in May 2019. He was effectively trapped in the United States for the entire COVID-19 pandemic, which repeatedly delayed his criminal trial, and so between May 2019 and the present he has lived in New York County. Ng eventually went to trial in February 2022. At trial, the government's star witness – indeed, the only witness to directly implicate Ng in criminal activity – was none other than Tim Leissner. Ng was convicted at trial, and is currently released on bond pending sentencing and appeal.

6.      Defendant Leissner is believed to now be a resident of Texas. From in or about 2016, Leissner lived in Los Angeles, California, in a $25 million home paid for with the proceeds of money he stole from 1Malaysia Development Berhad ("1MDB"), a strategic investment and development company wholly owned by the Government of Malaysia through its Ministry of Finance.

7.      Hwee Bin Lim is an individual who is married to plaintiff Roger Ng.

8.      Boon Kee Tan is an individual who worked at Goldman Sachs.

9.      Kimora Lee Simmons-Leissner is an individual who, at the relevant times herein, was and has been married to, and in business with, defendant Leissner.

10.     Russell Simmons is an individual who, at the relevant times herein, was the ex-husband of Ms. Simmons.

3

Case 1.18-cr-00439-MKB    Document 71-2    Filed 05/05/23    Page 5 of 26 PageID #: 651

11.     Nu Horizons Investment Group LLC ("NHIG") is a limited liability company that conducted business in California and New York. In a separate lawsuit filed in California Superior Court, NHIG and its manager, Russell Simmons, sued Leissner, Kimora Lee Leissner and several other entities and individuals for fraud, breach of contract and other causes of action. See Russell Simmons et al v. Tim Leissner et al, 21STCV18852. At times relevant to this Complaint, NHIG maintained a bank account in New York County.

12.     All Def Digital, Inc. is a digital hip hop platform founded by Russell Simmons.

13.     KLS Holdings, LLC is a limited liability company that at all relevant times was controlled by Ms. Simmons (the Managing Member and CEO) and maintained an address at 43 W. 24th Street, 9th Floor, New York, NY 10010. It maintained a bank account at Bank of America.

14.     Keyway Pride Ltd., LLC is a limited liability company that at all relevant times was controlled by defendant Leissner and others.

15.     Newland is Hong Kong entity with an address of "Room 1605, Wilson House, 19-27 Wyndam Street, Central Hong Kong."

16.     Oryx is also a Hong Kong entity which shares the identical address with Newland, namely, "Room 1605, Wilson House, 19-27 Wyndam Street, Central Hong Kong".

17.     Midas is a Delaware LLC with an address listed as "c/o Paracorp Incorporated, 2140 S Dupont Highway, Camden, Kent, DE 19934".

18.     Al-Kuwari is an individual citizen of Qatar with an address of Salman Bin Rabiah Street, 56, Al Khalifat Al Jadeeda, Doha, Qatar.

## JURISDICTION AND VENUE IN NEW YORK COUNTY

19.     Defendant Timothy Leissner's fraud, fraudulent concealment and unjust enrichment occurred, in part, in New York County. For example, as part of the fraud, defendant

4

Case 1.18-cr-00439-MKB Document 71-2 Filed 05/05/23 Page 6 of 26 PageID #: 652

Leissner directed plaintiff Ng to send three separate wires, totaling $1.25 million, to the NHIG bank account at JP Morgan Chase in New York County. Pursuant to Leissner's directions, Ng sent these funds to this account in New York County. In addition, as noted, Roger Ng is currently residing in New York County, and has resided in New York County since May 2019.

20.     At times relevant to this Complaint, defendant Leissner owned, used and possessed real property within the State of New York, specifically an apartment located at 11 East 68th Street, New York, New York.

21.     Defendant Leissner is subject to the personal jurisdiction of this Court for several reasons. First, per CPLR 302(1), because the causes of action in this complaint arise from defendant Leissner transacting business within the State of New York and contracting to provide goods and services in the State of New York. Second, per CPLR 302(2), because defendant Leissner committed a tortious act, specifically common law fraud and fraudulent concealment, within the State of New York. Third, per CPLR 302(3), because defendant Leissner committed a tortious act outside the State of New York, causing injury within the State of New York, and because defendant Leissner owned, used and possessed real property within the State of New York, specifically an apartment located at 11 East 68th Street.

22.     Venue is also proper in New York County, because defendant Leissner directed plaintiff Ng to send money to a bank account located at JP Morgan Chase bank in New York County, emailed plaintiff Ng wire instructions for this money to be sent, and maintained a residence in New York County.

## FACTS COMMON TO ALL CLAIMS

23.     This complaint alleges three causes of action against the defendant Timothy Leissner. First, common law fraud. Defendant Leissner lied to plaintiff Ng and others repeatedly

5

and as part of a single coherent effort to wrongfully acquire and retain plaintiff Ng's money and shares. Second, fraud in the inducement. Defendant Leissner engaged in a years-long pattern of lies with the specific intent of fraudulently inducing plaintiff Ng to part with his money and to allow Leissner to keep it. Third, unjust enrichment. Because defendant Leissner lied to get and keep plaintiff Ng's money and valuable shares, defendant Leissner has been unjustly enriched in the amount of at least $130,000,000.

## Leissner's Fraud Is a Continuing Wrong for Purposes of the Statute of Limitations

24.     Defendant Leissner's ongoing scheme to defraud plaintiff Ng has taken several forms between January 2015 and the present. First, defendant Leissner lied to plaintiff Ng in 2015 when he assured Ng that Leissner would personally ensure the principal of Ng's investment into Celsius. This false statement lured plaintiff Ng, on an ongoing basis, into parting with his money. All along, though, defendant Leissner knew that he would not in fact personally ensure plaintiff Ng's investment. Defendant Leissner also knew that once he had taken control of plaintiff Ng's investment, Leissner would then commit additional fraudulent acts to wrongfully and permanently retain Ng's shares and funds up to the present.

25.     Second, Leissner lied to plaintiff Ng in 2016 when he took $1,000,000 to supposedly sell plaintiff Ng 50% of defendant Leissner's investment in a company called Sentient. Defendant Leissner knew he would never transfer the shares to plaintiff Ng and would instead continue to retain plaintiff Ng's money.

26.     Third, defendant Leissner lied repeatedly to plaintiff Ng and his wife from 2016 through 2018 in an effort to fraudulently convince them that the shares and investment were secure and that the proceeds of the shares and investments would be forthcoming.

6

Case 1:18-cr-00439-MKB    Document 71-2    Filed 05/05/23    Page 8 of 26 PageID #: 654

27.     Fourth, defendant Leissner lied yet again during his direct testimony during the trial in U.S. v. Roger Ng earlier this year when he testified that he borrowed this money from Ng and that he had the intention of paying Ng back over time.

28.     This pattern of lies and deceit commencing in 2015 and continuing steadily through 2016, 2017, 2018 and up until his trial testimony in 2022 amount to a continuous course of conduct all with the same objective: to get and keep Roger Ng's shares and money.

### This Lawsuit Has Been Commenced Within Two Years of the Time Ng Discovered or Could Reasonably Have Discovered the Fraud

29.     Defendant Leissner's fraud on plaintiff Ng had the desired effect: Ng errantly believed that he owned shares in Celsius, that these shares were being kept safely for Ng and that Leissner would cause the shares or their current value to be provided to Ng upon request.

30.     It was not until Russell Simmons sued defendant Leissner in California Superior Court on or about May 12, 2021, that plaintiff Ng and his counsel learned for the first time that Leissner had stolen Ng's shares and, in fact, had used them to secure his release in the case of U.S. v. Leissner. Counsel for Ng notified the government. In particular, counsel notified the government that a portion of NHIG's Celsius shares belonged to plaintiff Ng and accordingly, requested documents related to the lawsuit pursuant to Brady, Gigilio and their progeny. Plaintiff Ng's counsel asked the government whether NHIG's shares were securing Leissner's bail, because if they were, that would be problematic on a number of levels. The government asked why. Plaintiff's counsel stated in sum and substance, "it is problematic because of where those shares came from. Leissner was able to purchase those shares from Ng who funded the purchase and it appears he has now stole them." Counsel further laid out plaintiff Ng's transfers to defendant Leissner and the government replied that even if that were to be the case, that would be Giglio material.

7

Case 1:18-cr-00439-MKB Document 71-2 Filed 05/05/23 Page 9 of 26 PageID #: 655

31.     Finally, after several phone calls and more letters to the government, the government provided counsel for Ng with disclosures on October 13, 2021: (1) finally producing the NHIG bank records to counsel, and (2) producing a seizure warrant of the NHIG shares from Kimora and Tim Leissner. Therefore, it was not until October 13, 2021, that plaintiff Ng discovered or could have discovered the fraud with reasonable diligence.

### Defendant Timothy Leissner's Scheme to Defraud

32.     In 2014, Leissner was a partner at Goldman Sachs and the Chairman of Southeast Asia and had entered a full-fledged criminal partnership with Jho Low. This included receiving already tens of millions in criminal funds from Jho Low and his related entities. Though this is an unthinkable amount of money for most people, for Mr. Leissner, it was not nearly enough. He was, at that time, carrying on two simultaneous marriages with two different wives in two different continents—Judy Chan Leissner in Hong Kong and Kimora Lee Simmons in Los Angeles, California—and at least one other mistress in Southeast Asia, Rohana Rohzan, to whom he was engaged to be married. Due to defendant Leissner's many relationships, he was spending a mind-boggling amount of money per month. Instead of working to continue paying for his lavish lifestyle, he decided to steal from 1MDB and from his friends and associates, including plaintiff Ng. Beginning in 2015 and continuing until the present, defendant Leissner stole money from plaintiff Ng, and several other people, claiming, among other things, that he was buying Celsius shares on their behalf, when in fact, he diverted the monies for his personal use.

33.     Beginning in 2015, defendant Leissner's need for liquidity was mounting, unbeknownst to plaintiff Ng. Amongst other obligations, defendant Leissner and Ms. Kimora Lee Simmons were looking at homes listed for tens of millions of dollars in Los Angeles, and the couple had agreed to contribute to a new round of funding for All Def Digital ("ADD"). On or

Case 1:18-cr-00439-MKB Document 71-2 Filed 05/05/23 Page 10 of 26 PageID #: 656

about January 9, 2015, Leissner agreed to the new round of funding for ADD despite telling several people in separate conversations that he needed "liquidity." To try to get "liquidity," defendant Leissner was seeking repayment on a loan he remitted to a company called ISC years prior and promised to invest €2 million to yet another company called Friendsurance. These were only a few of his multiple financial obligations at that time. Another included monthly payments for the yacht he purchased with stolen funds, called Sai Ram.

### Defendant Leissner Induced Plaintiff Ng's Investment Into NHIG for Investment into Celsius, Inc. Based on False Pretenses And Diverted Plaintiff Ng's Property for Personal Use Without Plaintiff Ng's Knowledge or Consent

34.     In or around early 2015, defendant Leissner asked plaintiff Ng to be a co-investor along with defendant Leissner in Celsius, Inc., in which Leissner was investing through NHIG. In the weeks and months that followed, defendant Leissner and plaintiff Ng had numerous conversations and written communications concerning the investment defendant Leissner proposed. Many of these written communications are emails that have been admitted into evidence to the trial of the U.S. v. Ng, and which defendant Leissner has admitted to writing and sending during his sworn testimony at the trial.

35.     Unbeknownst to plaintiff Ng, defendant Leissner was also soliciting investments into Celsius from numerous other friends and acquaintances during the same time period, taking millions of dollars from unsuspecting friends and claiming to use it for investment into Celsius.

36.     On or about February 24, 2015, John Fieldly, the Chief Financial Officer of Celsius, emailed defendant Timothy Leissner that the Celsius Board approved defendant Leissner and the consortium getting, among other things, a seat on the Celsius Board and an 8% discount on Celsius stock.

9

37.     Two days later, on or about February 26, 2015, defendant Leissner met with plaintiff Ng at Fullerton Bay, a hotel in Singapore, and first brought up the idea of plaintiff Ng investing into Celsius through the NHIG.

38.     At the February 26, 2015, meeting between defendant Leissner and plaintiff Ng, defendant Leissner, as part of a scheme to defraud plaintiff Ng and steal his money, solicited plaintiff Ng to invest in Celsius. Defendant Leissner explained to plaintiff Ng that Leissner would be leading a consortium of investors into Celsius. Defendant Leissner touted the merits of Celsius, assured plaintiff Ng that any investment in Celsius would be highly profitable, and that plaintiff Ng would be investing alongside defendant Leissner and others as part of a consortium of investors.

39.     On or about February 27, 2015, in furtherance of the discussions between plaintiff Ng and defendant Leissner concerning defendant Leissner's request that plaintiff Ng invest in Celsius, plaintiff Ng emailed defendant Leissner an article about Celsius. In determining whether or not to invest, plaintiff Ng asked defendant Leissner if the Celsius CEO was himself investing, and defendant Leissner responded that the CEO was making a small investment.

40.     As part of this same discussion, and in order to further persuade plaintiff Ng to invest in Celsius, on or about February 27, 2015, defendant Leissner stated in an email to plaintiff Ng, in substance, that Solina Chau—a wealthy, prominent, respected business-person, CEO of Horizon Ventures Limited Hong Kong—was investing in Celsius and that she would be distributing Celsius's product in China. Defendant Leissner stated this to plaintiff Ng because having Solina Chau actively marketing Celsius products in China was a significant development for Celsius and its profitability. As defendant Leissner testified, "if she can bring Celsius, which

Case 1:18-cr-00439-MKB   Document 71-2   Filed 05/05/23   Page 12 of 26 PageID #: 658

at that time was only being sold in the U.S. and Sweden, essentially, if she could open the Chinese market for distribution there, it could be a very – very significant move for Celsius."

41.     On or about March 7, 2015, ADD was organizing financing for its latest fund raise, in which both defendant Leissner and Ms. Kimora Lee Simmons Leissner had agreed to participate.

42.     On or about March 9, 2015, defendant Leissner communicated with Osman Eralp and Rich Slomovitz, the business manager and accountant for Rush Communications and Russell Simmons. Leissner had, at the time, promised a nearly three-million-dollar investment in ADD. Mr. Eralp asked defendant Leissner if he could wire the money to satisfy the ADD financing through NHIG, to which defendant Leissner responded "[t]hat's not a problem. We should budget for 10 days to get you the money as I have to release some deposits…." Mr. Eralp asked if it would "be possible to write $500k earlier," and defendant Leissner said "[y]es, that would be ok. Will this week work?"

43.     Two days later, on or about March 11, 2015, defendant Leissner emailed plaintiff Ng with bank information for NHIG "for purposes of the investment into Celsius."

44.     The bank information in the email that defendant Leissner sent to plaintiff Ng directed that the funds should be sent to a particular bank located in New York County that was controlled by NHIG.

45.     When defendant Leissner sent the bank information for NHIG to plaintiff Ng, defendant Leissner knew full well that he was going to steal Ng's money and use it for his own investment in ADD. Despite knowing that he was stealing this money from plaintiff Ng, defendant Leissner falsely and fraudulently assured plaintiff Ng that defendant Leissner would "guarantee you the principal amount of the investment." As with the other assurances that defendant Leissner

Case 1:18-cr-00439-MKB    Document 71-2    Filed 05/05/23    Page 13 of 26 PageID #: 659

made in order to defraud plaintiff Ng to part with his money, defendant Leissner blatantly lied to plaintiff Ng about guaranteeing his principal. The truth of course was that defendant Leissner was stealing plaintiff Ng's money and using it for his own investment, and he absolutely knew he was stealing this money at the moment he made the statement about guaranteeing it.

46.     Plaintiff Ng did not know that his money was being transferred to NHIG for the benefit of ADD. Plaintiff Ng believed that he was transferring his money on behalf of an investment consortium. Accordingly, he forwarded defendant Leissner's email to their mutual friend, Boon Kee Tan, and removed the part of defendant Leissner's email guaranteeing the principal, so that Ms. Tan would also have the NHIG banking information for purpose of the investment.

47.     On or about March 16, 2015, defendant Leissner, as part of his scheme to defraud plaintiff Ng out of his money and/or Celsius shares, emailed Osman Eralp regarding the ADD financing. In this email, Leissner lied to Eralp and blatantly misrepresented his relationship with Roger Ng. Leissner wrote that the $500,000 should be coming tomorrow and that the money would be coming from defendant Leissner's "accountant," Roger Ng. Plaintiff Ng was a banker. He worked at Goldman Sachs. He is not, and never was, an accountant. He is not, and never was, defendant Leissner's accountant. Defendant Leissner of course knew that when he told this lie. Indeed, defendant Leissner lied to Osman Eralp because he did not want Eralp to know that defendant Leissner was stealing plaintiff Ng's money.  Also, defendant Leissner did not want Eralp to indicate on company documents or otherwise that this $500,000 belonged to plaintiff Ng. Rather, defendant Leissner lied to Eralp and caused him to falsely believe that this $500,000 was defendant Leissner's money for Leissner's investment into ADD, and that it was being sent by plaintiff Ng only because plaintiff Ng was defendant Leissner's accountant.

12

Case 1:18-cr-00439-MKB    Document 71-2    Filed 05/05/23    Page 14 of 26 PageID #: 660

48.     On or about March 9, 2015, a letter of intent (LOI) was issued from Celsius to Ms. Simmons indicating that KLS, on behalf of an investor group, planned to invest $10,000,000 U.S. at $0.86 per share.  Defendant Leissner presented this LOI to plaintiff Ng so that plaintiff Ng understood the cost of each share he was purchasing in Celsius.

49.     On or about March 11, 2015, defendant Leissner orally stated to plaintiff Ng in substance, and among other things, that if plaintiff Ng invested money in Celsius, defendant Leissner personally guaranteed Ng's principal. In addition to these oral statements, on March 11, 2015, defendant Leissner wrote an email to plaintiff Ng in which he stated, "as it related to your $500,000 I will guarantee you the principal amount of the investment." Defendant Leissner made these representations to Ng both orally and in writing in an effort to convince Ng to participate in the investment. Ng, in turn, relied heavily on Leissner's assurance in deciding to make the investment. Without Leissner making this assurance, Ng would not have participated in the investment being pitched by Leissner.  To this extent, Leissner's assurance that he personally would guarantee Ng's principal was material, and indeed, central, to Ng in his decision to part with the money that Leissner immediately stole.

50.     At the time that Leissner made this statement to Ng, Leissner purported to have, and in fact did have, superior knowledge and control as to the company Celsius, its shares and this investment. Moreover, Leissner also knew that as Ng's former boss at Goldman Sachs, Leissner had a position of authority and expertise in Ng's estimation.  Leissner knowingly and fraudulently made this statement that he would personally guarantee Ng's investment with knowledge that it was false insofar as Leissner never intended to personally guarantee Ng's principal and that Leissner was making this false statement for one reason alone: to gain control of Ng's money and shares with the intent to permanently deprive Ng of them.

13

51.     As part of the false and fraudulent factual representation that Leissner would personally guarantee Ng's principal, defendant Leissner provided to plaintiff Ng wiring instructions to a bank account maintained by NHIG at JP Morgan Chase located at 980 Sixth Avenue in New York, New York.

52.     On March 17, 2015, in reliance on the false and material factual representation of defendant Leissner that he himself would personally guarantee the principal of plaintiff Ng's investment, plaintiff Ng wired $500,000 to the JP Morgan Chase account of NHIG, the address of which is 512 Fashion Avenue, New York, New York  10018, in New York County. Approximately a week after plaintiff Ng wired $500,000 to the NHIG account, defendant Leissner told plaintiff Ng that he should invest an additional $500,000 in Celsius. Leissner reiterated his prior factual assurance that he would personally guarantee Ng's principal.

53.     On or about March 17, 2015, defendant Leissner emailed Osman Eralp and Rich Slomovitz, stating "Btw, there will be two more $500k tranches coming over the next two days. We can decide if we want to keep those in Nu Horizon for now or send them along to ADD."

54.     On or about March 24, 2015, in reliance on Leissner's repeated factual representations that he personally guaranteed plaintiff Ng's investment in Celsius, plaintiff Ng wired another $500,000 to the NHIG account at JP Morgan Chase bank. Plaintiff Ng believed that both $500,000 payments were for NHIG's investment into Celsius. Additionally, on or about March 23, 2015, Boon Kee Tan's husband Yeo Hong Ping transferred $500,000 to the NHIG account at JP Morgan Chase Bank believing that they were also investing into Celsius.

55.     Leissner's factual representations to Ng that Leissner personally guaranteed Ng's investment, which as of the end of March 2015 amounted to $1,000,000, were knowingly and intentionally false and were specifically designed to induce Ng to make an investment that he

Case 1:18-cr-00439-MKB   Document 71-2   Filed 05/05/23   Page 16 of 26 PageID #: 662

otherwise would not have made. Defendant Leissner knew that he exerted influence and authority over Ng and that Ng would be particularly swayed by a promise by defendant Leissner to personally guarantee his investment. First, defendant Leissner had previously been Ng's boss at Goldman Sachs where defendant Leissner was a powerful, rich and influential partner and at all times was superior to plaintiff Ng in rank, income and authority. Second, defendant Leissner had a tremendous advantage in terms of the quality and nature of the information concerning the investment available to, and known by, the two men.

56. Defendant Leissner's knowingly and intentionally false statements were part of defendant Leissner's long-term plan to acquire and then permanently retain plaintiff Ng's money through additional false and fraudulent statements and actions. Indeed, as of March 2015, defendant Leissner knew something that plaintiff Ng and almost everyone else did not know, specifically that defendant Leissner had committed a massive theft, defrauding the Malaysian public out of funds, and that he needed a criminal war-chest of resources in the event law enforcement one day caught up to him and his criminal confederates.

57. Because defendant Leissner knew he had committed a massive fraud, and was continuing to do so, and further knew that one day he might be brought to justice, he also knew that he would have to acquire financial resources in any way he could. He proceeded to compile these financial resources in a variety of fashions including committing fraud against plaintiff Ng in the manner set forth in this Complaint.

58. On or about March 25, 2015, defendant Leissner invited plaintiff Ng to dinner in Beverly Hills, California and introduced plaintiff Ng to Chris Lai, the Investment Director at Horizon Ventures, Ltd. Hong Kong, the entity jointly investing into Celsius alongside NHIG. In the presence of Ms. Simmons, there was a discussion about defendant Leissner's and Lai's plans

15

Case 1:18-cr-00439-MKB   Document 71-2   Filed 05/05/23   Page 17 of 26 PageID #: 663

to grow the business of Celsius, especially in Asia. During a series of meetings on or about March 25, 2015, and March 26, 2015, Leissner told Lai, his wife Ms. Simmons and others that plaintiff Ng was an investor in Celsius.

59.    Yet, once defendant Leissner received $1,000,000 from plaintiff Ng, unbeknownst to plaintiff Ng, defendant Leissner instructed Eralp and Slomvitz that he "would like to keep $1 million back as I might need the $1mm for something else in the short term.". On or about April 1, 2015, Leissner diverted this $1,000,000 to an Escrow Trust Account for a down payment of a house. On or about April 6, 2015, defendant Leissner diverted $500,000 from NHIG to ADD without plaintiff Ng's knowledge.

60.    On or about April 16, 2015, the investor group consisting of defendant Leissner, Kimora Simmons, Horizon Ventures, plaintiff Ng and others closed the investment in Celsius.

61.    On or about May 2015, Defendant Leissner proposed to plaintiff Ng that defendant Leissner sell him an additional $500,000 in Celsius investment made through NHIG. Plaintiff Ng initially declined to make an additional investment on top of the $1,000,000 he had already invested. However, defendant Leissner insisted that soon he would take an active role in the company and that plaintiff Ng should not worry about making this additional investment as it would be safe and secure.

62.    On or about May 29, 2015, in reliance on defendant Leissner's statements, plaintiff Ng agreed to invest $250,000 more and transferred $250,000 to NHIG's bank account in New York, New York. Additionally, on or about the same day, Boon Kee Tan's husband, Yeo Hong Ping transferred $250,000 to NHIG's bank account. Plaintiff Ng believed that both transfers were for the purpose of NHIG's investment into Celsius.

63. As of May 29, 2015, plaintiff Ng understood, based on his agreement with defendant Leissner that plaintiff Ng's $1,250,000 investment purchased 1,453,488 shares for $0.86 per share.

64. However, unbeknownst to plaintiff Ng, two days later, on or about June 1, 2015, Defendant Leissner caused $400,000 to be transferred from the NHIG account at JP Morgan Chase to Nigel Burgess Ltd for payment of his yacht, the Sai Ram. Eighteen days later, on or about June 19, 2015, defendant Leissner caused $100,000 to be transferred from the NHIG account at JP Morgan Chase to KLS Holdings, Ms. Simmons' holding company. Plaintiff Ng believed that his $250,000 payment on or about May 29, 2015, was for the purchase of shares in Celsius, not for the maintenance of defendant Leissner's yacht, and not for an infusion of cash into Ms. Simmons' business.

65. On or about July 23, 2015, plaintiff Ng was hired as a consultant to Celsius in Asia. As part of his role at the company, he knew that NHIG was part of Celsius' capitalization table. Accordingly, plaintiff Ng believed and understood that the $1,250,000 that he transferred to NHIG's JP Morgan Chase account was for the purchase of Celsius shares.

**Plaintiff Ng Transferred $1,000,000 in 2015 and 2016 to Acquire 50% of Defendant Leissner's Stake in Sentient Technologies**

66. In or about September 2015, defendant Leissner complained to plaintiff Ng that Ms. Simmons was spending too much money and he needed more money to fuel her expensive lifestyle before extricating himself from the relationship with Ms. Simmons. Defendant Leissner stated that to help cover his costs, he needed a loan in the amount of $500,000. Based on the past relationship between defendant Leissner and plaintiff Ng and the trust plaintiff Ng had in defendant Leissner, plaintiff Ng wired $500,000 to the KLS Holdings LLC as a loan to defendant Leissner on September 2, 2015.

17

Case 1:18-cr-00439-MKB    Document 71-2    Filed 05/05/23    Page 19 of 26 PageID #: 665

67.     In January of 2016, Goldman Sachs put defendant Leissner on leave after they discovered that he falsified a document relating to his co-conspirator in the 1MDB fraud, Jho Low. Without company approval, defendant Leissner wrote a letter on Goldman Sachs' letterhead to Banque Havilland stating that "[i]n the course of Goldman Sachs acting as advisor for the above-mentioned transaction, Goldman Sachs conducted all required regulatory due diligence on the Low Family and hereby confirms that the Low Family's wealth of an estimated $1.8 billion at the point of our engagement was generated through legal means." As defendant Leissner has since admitted, that statement, to a regulated bank, was "not true." It was publicized, at that point in time, that Leissner was leaving Goldman Sachs, but the reason was not yet made public.

68.     Defendant Leissner was facing the fact that his multi-million-dollar salary and bonus had come to an abrupt end, but his cash hemorrhaging was showing no signs of slowing. He and Ms. Simmons were continuing to spend more money than they earned, so defendant Leissner panicked and asked multiple friends and acquaintances for more money. One of those friends was plaintiff Ng.

69.     On or about January 28, 2016, defendant Leissner stated to plaintiff Ng that defendant Leissner was leaving his position at Goldman Sachs and that he was hemorrhaging money due to Ms. Simmons' lifestyle.  Defendant Leissner asked plaintiff Ng for a loan that would be against defendant Leissner's Goldman Sachs shares. During this conversation, defendant Leissner assured plaintiff Ng that his $1,250,000 investment in Celsius was secure, despite defendant Leissner's own financial difficulties at the time. Plaintiff Ng stated that he would not be comfortable loaning against defendant Leissner's Goldman Sachs shares but would instead convert the $500,000 September 2015 payment and an upcoming $500,000 payment into a $1,000,000 stake in an Artificial Intelligence company Leissner had invested in called Sentient Technologies.

18

Case 1:18-cr-00439-MKB    Document 71-2    Filed 05/05/23    Page 20 of 26 PageID #: 666

70.     During conversations on or about January 28, 2016, and at other times during this time period, defendant Leissner stated to plaintiff Ng that plaintiff Ng's investment was secure, and that defendant Leissner would keep the promises he had made that defendant Leissner would continue to personally guarantee plaintiff Ng's investment. Moreover, defendant Leissner stated to plaintiff Ng that Celsius was profitable and that Ng's shares would turn a large profit at the appropriate time.

71.     Leissner's statements during this time period were false and were intended to induce plaintiff Ng into keeping his $1,250,000 Celsius investment with defendant Leissner and not pulling any or all of those funds out of the investment.  However, defendant Leissner was simply lying to plaintiff Ng all the while knowing that Leissner had designs on keeping Ng's money and his shares, which as of January 28, 2016, were worth approximately $3 million.

72.     On or about February 1, 2016, defendant Leissner and plaintiff Ng finalized an agreement whereby plaintiff Ng would transfer $500,000 more, in addition to the $500,000 plaintiff Ng transferred on or about September 2, 2015, to acquire 50% of defendant Leissner's interest in Sentient Technologies.

73.     On or about February 4, 2016, plaintiff Ng transferred $500,000 to defendant Leissner.

74.     Despite plaintiff Ng repeatedly asking defendant Leissner for his shares in Celsius and his shares in Sentient, defendant Leissner has never transferred either to plaintiff Ng.

75.     On or about November 11th and 12th, 2016, the defendant Timothy Leissner, his ex-wife, Judy Chan, plaintiff Ng and plaintiff Ng's wife, Hwee Bin Lim, met in Hong Kong with Master Pang.  On or about November 12, 2016, while at the Shangri La Hotel in Hong Kong, plaintiff Ng asked defendant Leissner for plaintiff's shares.  Defendant Leissner responded that

Case 1:18-cr-00439-MKB    Document 71-2    Filed 05/05/23    Page 21 of 26 PageID #: 667

NHIG still held plaintiff Ng's shares and that defendant Leissner would give plaintiff Ng the shares as soon as possible. Defendant Leissner explained during this meeting that he intended to divorce his wife Ms. Simmons, and that as soon as he did, he would give plaintiff Ng the shares he owed him. Defendant Leissner also stated that he needed some additional time to divorce Ms. Simmons and that he would give plaintiff Ng the shares in a short amount of time.

Defendant Leissner's statements directly to plaintiff Ng while the two men were in the presence of the others at the Shangri La hotel in Hong Kong were false, fraudulent and intended to deceive plaintiff Ng. Defendant Leissner had no intention of giving plaintiff Ng the shares in a short amount of time or indeed at any time. Simply put, defendant Leissner lied to plaintiff Ng's face, and he did so in order to convince plaintiff Ng to stop asking about the shares by instilling in him the false belief that the shares were available and that defendant Leissner would give them over shortly. The falsity of defendant Leissner's statements is borne out by the fact that as of November 2022, almost six years later, defendant Leissner still has not provided plaintiff Ng with the shares, and, short of being sued, would never do so.

### **Defendant Leissner Fraudulently Transferred the Shares on May 9, 2018**

76.     On or about May 9, 2018, defendant Leissner spoke with plaintiff's wife, Lim Hwee Bin, by telephone. During this call, Leissner stated that he would provide plaintiff Ng and his wife a total of 1,400,000 shares of Celsius by no later than October of 2018.

77.     Defendant Leissner's statements to Lim Hwee Bin were false and were made with the specific intention of mollifying both Lim Hwee Bin and her husband, plaintiff Ng, who were anxious to gain possession of these shares.

78.     By making these false statements to Lim Hwee Bin, defendant Leissner was hoping and intending that she would tell her husband, plaintiff Ng, that defendant Leissner made oral

Case 1:18-cr-00439-MKB    Document 71-2    Filed 05/05/23    Page 22 of 26 PageID #:
668

representations that the shares were secure and that he would be providing them with a total of 1,400,000 shares in roughly six months' time.

79.    However, unbeknownst to plaintiff Ng, that same day, on or about May 9, 2018, a schedule 13G was filed with the Securities and Exchange Commission for Celsius Holdings, Inc. related to the 3,972,659 NHIG shares. The Schedule 13G reports that defendant Leissner and Mr. Simmons caused a series of transactions to occur by which defendant Leissner, Ms. Simmons, Keyway Pride, Midas Commodities Agents LLC, Ghanim Saad M Al-Saad Al-Kuwari, Newland Inc. Limited and Oryx obtained full dominion, custody and control over NHIG and its interests in Celsius. The net sum of defendant Leissner's unlawful transactions set forth herein is that NHIG, and thereby plaintiff Ng, were defrauded such that his ownership interests in the roughly 1.4 million Celsius shares, were converted and misappropriated by defendant Leissner; and in addition, ownership and control of NHIG was converted and fraudulently transferred to defendant Leissner and others.

80.    On October 31, 2018, plaintiff Ng was arrested and incarcerated in Kuala Lumpur, Malaysia on a provisional U.S. arrest warrant. Central to the Government's case against plaintiff Ng was the defendant Leissner. As he testified at the trial in United States v. Ng, Leissner had been debriefed many times by the Federal Bureau of Investigation between June 12, 2018, and October 31, 2018, the day on which plaintiff Ng was arrested and incarcerated. As defendant Leissner also admitted during his testimony, defendant Leissner lied repeatedly to the FBI in an effort to implicate plaintiff Ng in criminal conduct in which defendant Leissner knew he was not involved.

81.    In February and March 2022, defendant Leissner testified against plaintiff Ng at the trial of United States v. Ng. During this testimony, defendant Leissner admitted to having told numerous lies to the FBI on a great range of subjects. However, one of the many lies that Leissner

Case 1:18-cr-00439-MKB    Document 71-2    Filed 05/05/23    Page 23 of 26 PageID #: 669

told during the trial is that he did not steal plaintiff Ng's shares of Celsius and had only asked

plaintiff Ng to "borrow money." On this point, Leissner testified as follows:

> Q: Did there come a time when didn't have access to more money?
> A: Yes.
> Q: How was that possible since you received millions of dollars from the scheme and from Goldman Sachs?
> A: As I mentioned, I had made several investments in companies, as well as real estate, in other items such as the boat. All of these investments were essentially illiquid meaning, that I couldn't just buy and sell those assets and raise more cash out of it. I had to, effectively, borrow against those assets or borrow money on a stand-alone basis. But it had been spent on investments that weren't throwing cash off back to me as quickly as I wanted it to be.
> Q: Why did you need more money?
> A: Because I was continuing to make investments that I found attractive and I was also using it on providing for the family.
> Q: And that family, which family at that point?
> A: My family with Kimora.
> Q: Did you ever ask anyone for money during that time?
> A: Yes, sir. I asked several of my friends to borrow money from them.
> Q: Who did you asked?
> A: I asked Roger for some, Boon-Kee, Jasmine, and other friends as well.
> Q: Why did you ask them?
> A: Because they were very close to me and we trusted each other.

82.     Defendant Leissner continued to lie on the witness stand about the money plaintiff

Ng entrusted Leissner with—even stating that the $1,250,000 that plaintiff Ng paid to NHIG was

somehow used to acquire defendant Leissner's stake in Sentient:

> Q: Did you pay the millions back to the defendant – how much was it?
> A: A million and a quarter.
> Q: Did you pay the million and a quarter back to the defendant?
> A: No. We had one agreement whereby part of the – part of that payment, that one and a quarter, was used to acquire a stake I had in a company called Sentient Technologies which was an artificial intelligence company. I believe he took half of that million dollars or so of that investment. My investment had been 2 million. So he got half of that, a million dollars worth, and I had the intention to pay him back over time.
> Q: Did you pay him back?
> A: No. We had not established a timetable for a repayment, sir, and I had not -- I didn't have a chance to pay him back.

Case 1:18-cr-00439-MKB    Document 71-2    Filed 05/05/23    Page 24 of 26 PageID #: 670

83.    These lies, which happened to be told in a federal courtroom, was just another lie that defendant Leissner told plaintiff Ng repeatedly between 2015 and 2022 in an effort to get and retain Ng's money and shares in Celsius.

### FIRST CAUSE OF ACTION
### (COMMON LAW FRAUD)

84.    Plaintiff repeats and realleges the allegations contained in all prior paragraphs as if set forth fully here.

85.    As alleged above, defendant Leissner lied to plaintiff repeatedly as part of an ongoing fraud to gain access to plaintiff's money, to falsely lead plaintiff to believe that defendant was securing the Celsius shares, and to discourage plaintiff from taking legal action to recoup his shares in Celsius.

As alleged above, defendant Leissner made numerous, specific misrepresentations of material facts as well as omissions of fact.  In addition, these misrepresentations and omissions were false and were known to be false by defendant Leissner. Moreover, defendant Leissner made these misrepresentations and omissions for the purpose of tricking Ng into relying on them.  Also, given the nature of the misrepresentations and omissions as well as the relationship between the parties, plaintiff Ng was justified in relying on them.  Finally, plaintiff Ng did rely on these material false statements and omissions and has been injured in an amount in excess of $130,000,000.

### SECOND CAUSE OF ACTON
### (FRAUD IN THE INDUCEMENT)

86.    Plaintiff repeats and realleges the allegations contained in all prior paragraphs as if set forth fully here.

87.    As alleged above, defendant Leissner represented matters of fact to plaintiff Ng. These misrepresentations were material and false. Moreover, defendant Leissner knew his

23

Case 1:18-cr-00439-MKB   Document 71-2   Filed 05/05/23   Page 25 of 26 PageID #: 671

misrepresentations were false and that he intentionally made them in order to induce plaintiff Ng

into relying on them. Plaintiff Ng did in fact rely on the material, false misrepresentations and did

not know that they were false.

88.     As a result of his reliance, plaintiff Ng was injured in an amount in excess of

$130,000,000.

### THIRD CAUSE OF ACTION
### (UNJUST ENRICHMENT)

89.     Plaintiff repeats and realleges the allegations contained in all prior paragraphs as if

set forth fully here.

90.     By reason of the defendant's conduct, the defendant has profited and has enriched

himself unjustly at the expense of, and to the detriment of, the plaintiff.

91.     The defendant should not be permitted, as a matter of fairness and equity and in

good conscience, to retain for himself the money and shares that rightfully belong to the plaintiff.

92.     By reason of the false and fraudulent statements of the defendant, the defendant has

realized profit of in excess of $130,000,000, for which sum the defendant is liable to the plaintiff.

93.     WHEREFORE, plaintiff demands judgment on each of the causes of action in an

amount to be determined by the Court but which is in excess of $130,000,000.

Dated: November 11, 2022
       New York, New York

BRAFMAN & ASSOCIATES, P.C.

Marc A. Agnifilo, Esq.
*Attorneys for Plaintiff*
256 Fifth Avenue, 2nd Floor
New York, New York 10001
(212) 750-7800

24

Case 1:18-cr-00439-MKB    Document 71-2    Filed 05/05/23    Page 26 of 26 PageID #: 672

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------X
NG CHONG HWA, also known as                               Index No.
ROGER NG,

                Plaintiff,

    -against-

TIMOTHY LEISSNER,

                Defendant.
--------------------------------------------------X

## ATTORNEY'S CERTIFICATION

Pursuant to 22 NYCRR130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document(s) are not frivolous.

Dated:      November 11, 2022
             New York, New York

                            BRAFMAN & ASSOCIATES, PC

                            Marc A. Agnifilo, Esq.
                            256 Fifth Avenue, 2nd Floor
                            New York, New York 10001
                            (212) 750-7800